UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
 :
BOZENA MIKUCKA, :
 :
                         Plaintiff, : **MEMORANDUM DECISION**
 : **AND ORDER**
                - against - :
 : 21-cv-951 (BMC)
 :
CVS PHARMACY, INC. and CVS :
ALBANY, LLC, :
 :
                     Defendants. :
 :
----------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff Bozena Mikucka brought this personal injury action against defendants CVS Pharmacy, Inc. and CVS Albany, LLC, in New York state court. She raised claims, seeking in excess of $75,000, arising out of defendants' alleged negligence in maintaining and operating their store premises. Defendants removed to federal court based on diversity and have moved for summary judgment. As plaintiff has raised a triable issue of fact, defendants' motion is denied.

Plaintiff has also moved for partial summary judgment on the issue of notice. Her motion is granted.

### BACKGROUND

This action concerns a CVS Pharmacy located in Queens, and specifically, Aisle 7 of that store. Aisle 7 is oriented laterally, running approximately twenty to twenty-five feet in length, three feet in width, and ending perpendicular to a wall of black refrigerated cases.[1] Aisle 7 shares a shelving unit, called a gondola, with Aisle 8. Against this gondola, at the end of both

---

[1] In defendants' Rule 56.1 statement, they contradict themselves; at one point they claim that the aisle is three feet in width, at another, six. Since all facts are assumed in the light most favorable to plaintiff, I will assume the width was three feet for purposes of this motion.

aisles, was a black plastic object called a bulk stack holder.[2]  Both the floor of Aisle 7, and the ground on which the bulk stack holder rested, are carpeted in a black-grey carpet.  Next to the bulk stack holder, there is a walkway of light-colored tile flooring that runs perpendicular to the back of the aisles, and in front of the wall of refrigerated cases.

On the afternoon of the accident, plaintiff went to the store, intending to pick up a prescription and Jet-Dry rinse aide.  Plaintiff regularly visited this store and was familiar with its layout.

Upon entry, plaintiff went to the pharmacy and, after getting her prescription, proceeded to retrieve the Jet Dry rinse aide from Aisle 7.  Plaintiff entered the aisle at the front, from the direction opposite the bulk stack holder and refrigerated cases.  From that angle, she was able to observe the aisle.  She believed "the aisle [was] empty" and that "there was nothing on the floor" or "on the end of the aisle."  Plaintiff proceeded down the length of the aisle, locating the Jet Dry towards the rear.  After retrieving it, she turned around to face the front of the aisle.

At this point, another customer with two small children, one of whom was in a stroller, and another of whom was loose, approached plaintiff from the front of Aisle 7.  When the customer was only a few feet away from plaintiff, she suddenly told plaintiff to "get out of her way."  Surprised, plaintiff took two steps backward, without looking behind her.  On the second step, her left foot hit the bulk stack holder, which came up to approximately six inches off the ground.  She lost her balance and landed on her left side.

Following the accident, plaintiff was quickly approached by the store manager, Evelyn Anspake.  Plaintiff explained that she had fallen when she was attempting to make room for the woman, her stroller, and her other child to pass.  Although plaintiff testified that there were no

---

[2] A bulk stack holder is used to hold larger items, such as paper goods, at the end of aisles in stores.

products in the bulk stack holder at the time she tripped over it, Anspake observed 18 units of paper towels stacked upon it. CVS District Leader Michael Frazzetta, who has overseen the store since 2018, was not present on the day of the accident. Therefore, he was not sure whether the bulk stack holder was empty or not, but he noted that "[i]t should never be empty."

Although Frazzetta was not in the store on the day of the accident, he was aware from his twice monthly visits to the store that the bulk stack holder encroached the walkway of Aisle 7 and had for some time. Therefore, both parties acknowledge that the bulk stack holder protruded into Aisle 7. Where they disagree is to how much, and relatedly, the exact dimensions of the bulk stack holder. Plaintiff contends that it protruded into Aisle 7 by approximately five to six inches. By contrast, defendants concede that "portions of the bulk stack holder base extend[ed] four-inches" into the aisle. Likewise, Frazzetta testified that the intrusion was between three and six inches. Both parties seem to agree that such a protrusion did not intrude on the walkway more than 36 inches.

CVS's policies and practices are informed by the Americans with Disabilities Act, which mandates that aisles have 36 inches of clear walkway. As to the bulk stack holders specifically, Frazetta testified that they are "put in place [by CVS] based on ADA guidelines . . .[and] in some cases, it can be wider than the actual end piece." He believed that a bulk stack holder being wider than the width of the aisle "did not violate any CVS policies or practices."

Written CVS policy, however, states that "[w]hen setting up merchandise displays, pallets, signage, J-hooks, or other fixtures make sure these items do not protrude more than 4" inches into the aisle. Additionally, the manufacturer of the gondola abutting the bulk stack holder also warned customers, "[t]o avoid store personnel or customers accidentally coming in contact with display fixtures, never allow any . . . other display to protrude into an aisle."

3

## DISCUSSION

### I. Standard of Review

It is well settled that summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

The party seeking summary judgment carries the burden of demonstrating the absence of any disputed issues of material fact and entitlement to judgment as a matter of law. Rojas, 660 F.3d at 104. The court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Sledge v. Kooi, 564 F.3d 105, 108 (2d Cir. 2009).

A moving party may indicate the absence of a factual dispute by "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). Once the moving party has met its burden, the non-moving party normally "must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

4

## II. Applicable Law

A defendant is entitled to summary judgment in a negligence action under New York law where the undisputed evidence shows that the plaintiff cannot make out a prima facie case of negligence. "To establish a prima facie case of negligence, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." Solomon v. City of New York, 66 N.Y.2d 1026, 1027, 499 N.Y.S.2d 392, 392 (1985); see also Coyle v. United States, 954 F.3d 146, 148 (2d Cir. 2020) ("To establish liability [for negligence] under New York law, a plaintiff must prove (1) that the defendant owed her a duty; (2) that the defendant breached that duty; and (3) that she suffered injuries proximately resulting from that breach.").

### A. Open and Obvious Condition

Defendants argue that plaintiff has failed to prove that they breached any duty owed to her because the condition was open and obvious. Their argument is unpersuasive.

"New York landowners owe people on their property a duty of reasonable care under the circumstances to maintain their property in a safe condition," Tagle v. Jakob, 97 N.Y.2d 165, 168, 737 N.Y.S.2d 331, 332 (2001), "which duty includes eliminating, protecting against, or warning of dangerous, defective, or otherwise hazardous conditions." Pinero v. Rite Aid of New York, Inc., 294 A.D.2d 251, 252, 743 N.Y.S.2d 21, 23 (1st Dep't 2002). However, "there is no duty to protect or warn against conditions that are in plain view, open, obvious, and readily observable by those employing the reasonable use of their senses." Id. (internal quotations omitted); see also Tagle, 737 N.Y.2d at 169, 737 N.Y.S.2d at 333 (New York courts have "long held that a landowner has no duty to warn of an open and obvious danger").

Although "[t]here is no bright line test for determining what is open and obvious," Centeno v. Regine's Originals, Inc., 5 A.D.3d 210, 211, 773 N.Y.S.2d 62, 63 (1st Dep't 2004),

"[a] condition that is ordinarily apparent to a person making reasonable use of his or her senses may be rendered a trap for the unwary where the condition is obscured or the plaintiff is distracted." Toro v. Friedland Properties, Inc., 111 A.D.3d 921, 923, 976 N.Y.S.2d 158, 160 (2nd Dep't 2013) (internal quotations and citations omitted). Additionally, even "[s]ome visible hazards, because of their nature or location, are likely to be overlooked." Grizzell v. JQ Assocs., LLC, 110 A.D.3d 762, 765, 973 N.Y.S.2d 268, 270 (2nd Dep't 2013).

Critically, "the issue of whether a hazard is latent or open and obvious is generally fact-specific and thus usually a jury question." Tagle, 97 N.Y.2d at 169, 737 N.Y.S.2d at 334; Fasano v. Green-Wood Cemetery, 21 A.D.3d 446, 446, 799 N.Y.S.2d 827, 828, (2nd Dep't 2005) ("[w]hether a dangerous condition exists on real property so as to create liability on the part of the landowner depends on the peculiar facts and circumstances of each case and is generally a question of fact for the jury."). Accordingly, "New York courts have shown great reluctance to grant summary judgment on the theory that a condition is open and obvious," Nipon v. Yale Club of New York City, No. 13-cv-1414, 2014 WL 6466991, at *6 (S.D.N.Y. Nov. 18, 2014), where the facts do not compel a finding that "the hazard was so obvious that it would necessarily be noticed by any careful observer, so as to make any warning superfluous." Juoniene v. H.R.H. Const. Corp., 6 A.D.3d 199, 201, 774 N.Y.S.2d 525, 526–27 (1st Dep't 2004) (citations omitted) (denying summary judgment to defendant since a standpipe protruding over a public sidewalk "might be overlooked by a pedestrian under the circumstances allegedly confronted by plaintiff – where a standpipe protruding over a public sidewalk could not be observed because of the glare from the sun"); see also Gordon v. Pitney Bowes Mgmt. Servs., Inc., 94 A.D.3d 813, 815, 942 N.Y.S.2d 155, 158 (2nd Dep't 2012) (finding on summary judgment that a plastic bin placed on the ground one step from the opening of plaintiff's cubicle

was not open and obvious due to its proximity to plaintiff's cubicle opening, which allegedly obscured her line of sight).

Defendants argue that the bulk stack holder over which plaintiff tripped was open and obvious because it was "readily observable in contrast to the gray carpeting." Had plaintiff been looking where she was going, and thus utilizing her senses, defendants contend, she would have seen it. Various facts belie defendants' characterization of the evidence.

First, plaintiff testified that she did not in fact see the bulk stack holder when walking down the aisle. Even though she had not been looking in its direction at the time of the accident, the record reflects that she had ample time to observe the aisle and did not see any protrusions. Therefore, this case differs from cases where summary judgment was granted, some of which are cited by defendants, where a plaintiff admitted knowledge of the dangerous condition. See Chaney v. Starbucks Corp., 115 F. Supp. 3d 380, 387 (S.D.N.Y. 2015) (finding the condition open and obvious where the plaintiff admitted seeing it, and his counsel admitted at argument that it was indeed open and obvious); Schwartz v. Kings Third Ave. Pharmacy, Inc., 116 A.D.3d 474, 475, 984 N.Y.S.2d 13, 14 (1st Dep't 2014) (granting summary judgment where plaintiff allegedly tripped and fell over a display rack in the aisle of defendant's store because it was open and obvious, where the hazard "did not protrude into the aisle," and plaintiff's testimony indicated that she saw the display rack before the accident); Schulman v. Old Navy/The Gap, Inc., 45 A.D.3d 475, 476, 845 N.Y.S.2d 341, 342 (1st Dep't 2007) (affirming the trial court's finding on summary judgment that a metal bracket on a clothing rack was not open and obvious where "plaintiff admitted that she knew the bracket was there"). Here, plaintiff contests that she had knowledge of the bulk stack holder's presence, despite having time to observe the condition had it been obvious.

Second, and perhaps most critically, there is a factual issue as to whether the bulk stack holder contained any product in it at the time of the accident. Without any product in it, the bulk stack holder would have been far more difficult to appreciate, at only a few inches off the ground, and being made of a dark plastic set against a dark carpet. Therefore, "because of [its] nature [and] location, [it may be a condition] likely to be overlooked." Grizzell, 110 A.D.3d at 765, 973 N.Y.S.2d at 270. Whether the condition was open and obvious is somewhat dependent on if the bulk stack holder contained product. And where "defendants failed to eliminate all triable issues of fact as to whether the condition was open and obvious or was rendered a trap," judgment is best reserved for the jury. Gordon, 94 A.D.3d at 815, 942 N.Y.S.2d at 158.

Because I find that there is a question of material fact with respect to whether the bulk stack holder's protrusion was an open and obvious condition, I need not reach the question of whether defendants may still be liable for violating their duty "to maintain the store in a reasonably safe condition." Price v. Staples Office Superstore E., Inc., 85 A.D.3d 447, 447, 924 N.Y.S.2d 92, 92–93 (1st Dep't 2011) (reversing grant of summary judgment to defendant where plaintiff allegedly tripped over rolled up carpeting because "[a] jury could reasonably conclude that the rolled up carpeting constituted a tripping hazard," which may breach defendant's duty to maintain the premises in a reasonably safe condition); see also Dietzen v. Aldi Inc. (New York), 57 A.D.3d 1514, 1514 870 N.Y.S.2d 189, 190 (4th Dep't 2008) (finding issue of fact as to whether a wooden pallet protruded into the aisle of the store, creating a dangerous condition that may violate defendant's obligation to keep the property in safe condition even if it was open and obvious).

I also reject defendants' argument that their adherence to certain ADA guidelines, and New York City and State codes, rules, and guidelines provides a safe harbor. First, these

8

guidelines are not the applicable standard of negligence here. See Lugo v. St. Nicholas Assoc., 18 A.D.3d 341, 342, 795 N.Y.S.2d 227, 228-29 (1st Dep't 2005). Moreover, there is an issue of fact as to whether defendants violated their own organizational safety policies limiting protrusions into walkways to four inches, deviance from which "could be considered by the jury as some evidence of negligence." Fras v. Creative Playthings, Inc., 151 F. App'x 10, 11 (2d Cir. 2005) (internal quotations omitted).

### III. Notice

Plaintiff asserts that she is entitled to summary judgment on the element of notice. I agree.

"Under New York law, for a landowner to be liable in tort to a plaintiff injured as a result of an allegedly defective or dangerous condition, plaintiff must establish that a defective condition existed, and the landowner either affirmatively created the condition or had actual or constructive notice of its existence." Poirier v. Kohl's Dep't Stores, Inc., No. 19-cv-3001, 2021 WL 1178214, at *3 (S.D.N.Y. Mar. 29, 2021) (citing Lezama v. 34-15 Parsons Blvd, LLC, 16 A.D.3d 560, 560, 792 N.Y.S.2d 123, 124 (2nd Dep't 2005)). "A defendant has actual notice if it either created the condition or received reports of it such that it is actually aware of the existence of the particular condition that caused the fall." Bogery v. United States, No. 17-cv-6996, 2018 WL 4265901, at *3 (S.D.N.Y. Sept. 6, 2018) (internal quotations and citations omitted).

There is no dispute here that defendants were responsible for the procurement and placement of the bulk stack holder. Moreover, it is also undisputed that they were aware that it encroached upon the walkway for some time; Frazzetta testified that he had personally observed the bulk stack holder encroaching on the walkway of Aisle 7 prior to the accident. Accordingly, as defendants "created the condition," plaintiff's motion for summary judgment on the issue of notice is granted. Id.

9

## CONCLUSION

Defendants' motion for summary judgment is DENIED, and plaintiff's motion for partial summary judgment is GRANTED.

**SO ORDERED.**

Digitally signed by Brian M. Cogan

_____
U.S.D.J.

Dated: Brooklyn, New York
       May 3, 2022